DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, James L. Cremeans, appeals from a judgment of the Summit County Court of Common Pleas, which found him guilty of the felonious assault of Stewart Stutzman. We affirm.
 I. {¶ 2} Mr. Cremeans and Stutzman were neighbors with a history of antagonism. On the night in question, Stutzman and his brother were in their garage and were approached by Cremeans and some others. Hostile words ensued, including explicit threats of arson and murder. Apparently, all involved had been drinking.
 {¶ 3} While his brother ran to call the police, Stutzman engaged Cremeans in a fight; Stutzman with a jack handle and Cremeans with a knife. Stutzman claims Cremeans attacked first with the knife, Cremeans claims Stutzman attacked first with the jack handle, but it is undisputed that Cremeans stabbed Stutzman. The stabbing ceased when the brother struck Cremeans with a metal pipe. Both eventually received medical treatment for serious injuries.
 {¶ 4} Mr. Cremeans was arrested and charged with attempted murder, per R.C. 2903.02(A), a first degree felony, and felonious assault, per R.C. 2903.11(A)(1)-(2), a second degree felony. A jury acquitted him of attempted murder, but convicted him of the felonious assault and the court sentenced him accordingly. Mr. Cremeans timely appealed, asserting two assignments of error for review.
 II. A. First Assignment of Error
"The jury verdict finding Appellant guilty of felonious assault (R.C. 2903.11) was against the manifest weight of the evidence in violation of the due process clause of the United States constitution and Article I, Section 16 of the Ohio constitution."
 {¶ 5} Mr. Cremeans admits to stabbing Stutzman, but alleges that the jury overlooked his justification for the stabbing and insists that he acted in self defense. Thus, Mr. Cremeans charges that the verdict was against the manifest weight of the evidence and should be reversed. We disagree.
 {¶ 6} The Ohio Supreme Court has established the standard for reviewing an appellant's claim that the trial court decision was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 280. Furthermore:
"In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Quotations and edits omitted.) Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, fn.3.
That is, "a court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct." Id. at 80.
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. See, also, State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 7} A conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence. SeeState v. Jenks (1991), 61 Ohio St.3d 259, 272. Similarly, upon presentation of conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Thus, reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v.Otten (1986), 33 Ohio App.3d 339, 340. Accord State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 8} Mr. Cremeans insists that he acted in self defense and that the evidence brought forth at trial demonstrates as much; so much so that the jury's contrary finding is a miscarriage of justice indicative of the jury losing its way. Self defense will justify the use of force where one can establish, by a preponderance of the evidence, that he or she was not the instigator of the altercation, acted under a reasonable belief that force was necessary to repel the imminent use of force by another, and did not violate any duty to retreat or avoid the danger. State v. Barnes
(2002), 94 Ohio St.3d 21, 24. The jury convicted Cremeans of felonious assault, thereby implicitly rejecting his self defense claim.
 {¶ 9} At trial, the jury heard testimony from 14 witnesses. The State produced nine witnesses, including eyewitnesses, police officers and investigators, and the victim, Stutzman. Mr. Cremeans produced four witnesses and himself, though the credibility of each was challenged. Upon acknowledging that such extensive testimony will inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. See DeHass, 10 Ohio St.2d at paragraph one of the syllabus.
 {¶ 10} In presenting its case for felonious assault, the State presented a logical sequence of events and an accounting of each party or witness, reconciled photos and locations with the corroborating testimony, played the 911 calls for the jury, and highlighted omissions or inconsistencies in the defense's theory. Simply put, the State produced evidence that Cremeans armed himself with a knife, proceeded onto Stutzman's property with that knife, and struck first. Cremeans never disputed that he was armed with a knife, and his own witnesses testified as much. Cremeans disputes that he entered Stutzman's property, but the State demonstrated as much through the testimony of both interested (Stutzman's wife and brother) and disinterested (neighbors) witnesses, as well as the responding officers and investigators who established that the crime scene was on Stutzman's property through drawings, photos of blood evidence, and on-scene accounts. Finally, Stutzman testified that Cremeans struck first with the knife, whereupon he responded with a jack handle. Because Stutzman and Cremeans were the only witness to the first strike, this was critical testimony. Based on our review of the record, we find it reasonable, and indeed likely, that the jury would have believed the testimony and evidence proffered by the State.
 {¶ 11} As Mr. Cremeans relied on an affirmative defense of self defense, both at trial and now on appeal, the critical inquiry is into the persuasiveness of his defense. Mr. Cremeans presented four other witnesses, in addition to his own testimony, who included his wife and three neighbors who had aligned themselves with him at the time of the incident. Based on our review of the transcript, we find much of this testimony self-serving, inconsistent, contradictory, and at points unbelievable. For example, the defense leans heavily on its claim that Stutzman initiated the encounter by throwing a flaming object into Cremeans' yard, and invited each of these witnesses to testify as to the flaming object. Yet, at no point did any witness ever actually produce or even accurately describe this mysterious flaming object, no one seemed to know what it was or how big it was, no one even knew where it landed (one witness actually testified that it hit a dog), and no one directed the police to the object at the scene, pointed to any cinders or even identified a scorched mark on the ground. No one documented the object, its remnants or any scorch mark via photograph, and no disinterested party had any recollection of this perplexing flaming object.
 {¶ 12} Similar issues throughout the defense testimony persuade us that the jury could reasonably have found such testimony simply not credible. The defense produced a videotape that purported to document the prelude to the fight, but once viewed, seemed to implicate Cremeans and his nephew as the aggressors. At least one of Cremeans' witnesses testified that Cremeans charged onto Stutzman's property to engage in the fight, contrary to Cremeans' testimony and legal theory. One of Cremeans' witnesses testified that when the police arrived, Cremeans hid the knife under a trampoline in the back yard and then later took then knife to the dishwasher inside the house. This testimony became all the more relevant when Cremeans was caught in a lie, thus being forced to admit during his own testimony that he had lied to the investigating officer about not having a knife or knowing its whereabouts. Finally, Cremeans testified that, having been struck first, he was unconscious during the ensuing stabbing and fight and could not recollect who had struck him when or who he had stabbed.
 {¶ 13} Based on our review, we must conclude that the mere fact that the jury chose to disbelieve the above described defense theory of the encounter, and instead chose to believe the State's version, is insufficient to find that the jury lost its way or created a manifest miscarriage of justice. See Gilliam, supra; Otten, 33 Ohio App.3d at 340;Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, and thereby rejected Mr. Cremeans' self defense claim. We conclude that the conviction for felonious assault is not against the manifest weight of the evidence. This assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred in failing to instruct the jury on aggravated assault (R.C. 2903.12)."
 {¶ 14} Mr. Cremeans asserts that the trial court erred by refusing to instruct the jury on a potential alternative finding of aggravated assault, rather than felonious assault, because he presented sufficient evidence of provocation to warrant such an instruction. Mr. Cremeans argues for a new trial on this basis. We disagree.
 {¶ 15} The necessity of a particular jury instruction is a question of law to be reviewed de novo, unless the trial court's decision was based on the discretionary determination as to whether the evidence presented at trial was sufficient to require the particular instruction. State v.Lessin (1993), 67 Ohio St.3d 487, 494. Where the question is one of supporting evidence, the trial court's determination will be overturned on appeal only upon finding an abuse of discretion. State v. Wolons
(1989), 44 Ohio St.3d 64, 68. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable," Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Id.
 {¶ 16} A defendant is entitled to a jury instruction on aggravated assault, rather then felonious assault, when the evidence presented at trial reasonably supports a finding of serious provocation. State v.Deem (1988), 40 Ohio St.3d 205, paragraph four of the syllabus. However, the Supreme Court has limited the breadth of serious provocation, stating for example that words alone or fear alone would not constitute serious provocation. State v. Mack (1998), 82 Ohio St.3d 198, 201. Furthermore, a theory of self defense is incompatible with a theory of aggravated assault, because the former requires proof of defendant's fear or apprehension while the latter requires a showing of serious provocation or rage. State v. Loyed, 8th Dist. No. 83075, 2004-Ohio-3961, at ¶ 11, citing State v. Harris (1998), 129 Ohio App.3d 527, 534-35.
 {¶ 17} Mr. Cremeans, before the trial court and on appeal, predicates his entire defense on a theory of self defense. Such a theory is incompatible with a jury instruction on aggravated assault. See id. Therefore, the circumstances of this case did not warrant such a jury instruction, and therefore, we find that the trial court did abuse its discretion in refusing to issue such an instruction. See Blakemore,5 Ohio St.3d at 219; Pons, 66 Ohio St.3d at 621. This assignment of error is overruled.
 III. {¶ 18} Mr. Cremean's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Whitmore, J., Concur.