[Cite as *State v. Ward*, 2017-Ohio-13.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104012**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DERICK ALLEN WARD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598195-A

**BEFORE:**   Blackmon, J., E.A. Gallagher, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   January 5, 2017

**ATTORNEY FOR APPELLANT**

Dale M. Hartman
1295 Green Road
South Euclid, Ohio 44121


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Nathalie E. Naso
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Derick Allen Ward ("Ward") appeals convictions for aggravated vehicular homicide, failure to stop after an accident, and failure to comply and assigns six errors for our review.[1]

{¶2} Having reviewed the record and pertinent law, we affirm Ward's convictions. The apposite facts follow.

{¶3} Ward entered a guilty plea to aggravated vehicular homicide, failure to stop after an accident, and failure to comply with the signal of a police officer. The facts underlying the plea were that on January 24, 2015, at approximately 5:32 p.m., while fleeing officers, Ward, who had a suspended driver's license, fled from University Heights police officers at a high rate of speed. He eventually crashed into the victim who was jogging on South Park Boulevard. Ward fled the scene of the accident.

{¶4} It took police several weeks to determine who was driving the vehicle because Ward told the officers that someone had stolen his vehicle. Eventually, officers recovered a hat belonging to Ward containing shards of glass from the vehicle's windshield, which linked Ward to the incident. Ward was thereafter arrested by police.

{¶5} After hearing from the victim's wife, other family members, work colleagues, and Ward, the trial court sentenced Ward to eight years for the aggravated vehicular homicide and imposed 36 months on the counts for failure to comply and

---

[1]*See* appendix.

failure to stop to be served concurrent with each other but consecutive with the aggravated vehicular homicide count for a total of 11 years in prison.

## Failure to Explain Rights

{¶6} We will address Ward's first and second assigned errors together. He argues in these assigned errors that the trial court failed to explain and determine if he understood the rights he was waiving by pleading guilty.

{¶7} In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and is void. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)._

{¶8} A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of federal constitutional rights. These include the right to a jury trial, the right of confrontation, and the privilege against self-incrimination. *Id*. at 243-44. Under the more stringent standard for constitutionally protected rights, a trial court's acceptance of a guilty plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights "in a manner reasonably intelligible to that defendant." *State v. Ballard*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977), paragraph two of the syllabus.

{¶9} Substantial compliance with Crim.R. 11(C) is sufficient when waiving nonconstitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The nonconstitutional rights that a defendant must be informed of are the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty,

and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a) and (b). Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. *Nero* at 108._

{¶10} A review of the plea hearing shows that under the totality of the circumstances, Ward understood both his constitutional and nonconstitutional rights that he was waiving by entering a plea. Prior to explaining the rights that Ward was waiving, the trial court stated: "It is important that you interrupt me should there be any one of the rights we go over that you fail to understand?" Thereafter, prior to explaining each right, the court inquired, "do you understand?" Each time, Ward stated that he understood. Because Ward told the court that he understood the rights that he was waiving, the trial court had no reason to provide further explanation. Moreover, our review shows that the trial court explained each constitutional right in a reasonably intelligible manner and more than substantially complied in explaining each nonconstitutional right. Accordingly, Ward's first and second assigned errors are overruled.

### Probation

{¶11} In his third assigned error, Ward argues that the trial court erred by failing to inform him that he was ineligible for probation. He claims if had he known this, he would not have entered a guilty plea.

{¶12} Our review of the record from the plea hearing shows that the trial court informed Ward that the sentence for aggravated vehicular homicide carried a "mandatory prison term of anywhere from two to eight years in yearly increments." When the trial

court asked Ward if he understood, he indicated that he did. Therefore, he was well aware that he was not going to receive probation. Accordingly, Ward's third assigned error is overruled.

## Nature of the Crime

{¶13} In his fourth assigned error, Ward argues that the trial court erred by not determining that Ward understood the nature of the charges to which Ward entered a guilty plea.

{¶14} "Crim.R. 11(C)(2)(a) requires the court to determine whether a defendant has an 'understanding of the nature of the charges,' but that requirement does not require the court to inform the accused of the actual elements of the charged offense during the plea colloquy." *State v. Woodard*, 8th Dist. Cuyahoga Nos. 94672 and 94673, 2011-Ohio-104, ¶ 4. Instead, the court must look to the circumstances of the case to determine whether the defendant understands the charges to which he is pleading. *See State v. Esner*, 8th Dist. Cuyahoga No. 90740, 2008-Ohio-6654, ¶ 3; *State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-1634, ¶ 11.

{¶15} In the instant case, the totality of the circumstances indicates that Ward understood the nature of the charges. At the start of the plea hearing, the prosecutor identified the terms of the plea agreement and Ward's trial counsel also informed the trial court that he had discussed the plea with Ward and that he was in "accord with the recommendation."

{¶16} The trial court asked Ward, "Do you fully understand what you are going to be pleading guilty to?" Ward responded, "Yes, ma'am." The trial court then proceeded

to state each offense he was pleading to, the degree of felony, and the possible prison term. After explaining each count, the trial court asked whether Ward understood, to which he responded that he did. When the court was done stating the charges and possible sentences, the trial court asked, "Do you have any questions that you would like to ask of me regarding your plea and the potential consequences?" Ward responded, "No ma'am." We conclude that Ward was aware of the nature of the charges to which he knowingly, intelligently, and voluntarily pleaded guilty. Accordingly, Ward's fourth assigned error is overruled.

## Allied Offenses

{¶17} In his fifth assigned error, Ward contends that the charges should have merged because the crimes were the result of the same conduct; therefore, they are allied offenses.

{¶18} At the sentencing hearing, the trial court heard arguments as to whether the charges were allied offenses. The state argued that they were separate and distinct offenses and played a dash-board video cam from the police cruiser as proof. The state argued that the first offense was committed when Ward chose not to stop when signaled by the police siren; the second act was committed when he hit and killed the victim; and the third was committed when he chose to flee the scene of the accident. In response, defense counsel simply stated, "these are allied offenses and should merge."

{¶19} The Ohio Supreme Court has recently clarified that in determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, "courts must evaluate three separate factors — the conduct, the animus, and the import."

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. If any of the following is true, the offenses do not merge and the defendant may be convicted and sentenced for multiple offenses:

> (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

*Id*. at ¶ 25.

{¶20} We conclude that while Ward's actions were interconnected, they were independent acts committed with a separate animus. Ward failed to stop when the officers activated their sirens. He drove recklessly at a high rate of speed which caused the aggravated vehicular homicide. Finally, he fled the scene of the accident after hitting the victim. Thus, these three incidents were not all one transaction as Ward alleges, but consisted of three separately committed offenses that each had a separate animus. *See State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486 (court concluded that failure to comply, failure to stop after an accident, and aggravated vehicular assault were not allied offenses because they were committed with a separate animus). Accordingly, Ward's fifth assigned error is overruled.

### Inconsistent and Disproportionate Sentence

{¶21} In his sixth assigned error, Ward argues that his combined sentence of 11 years in prison was disproportionate to his crimes given his genuine remorse and the fact he had never before caused a loss of life and the sentence was inconsistent with sentences given for similar offenders.

**{¶22}** R.C. 2953.08 precludes our review of a sentence unless the appellant advances a claim that the sentence is contrary to law. R.C. 2953.08(A)(4); *State v. Montanez-Roldon*, 8th Dist. Cuyahoga No. 103509, 2016-Ohio-3062, ¶ 10, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 8._ A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *Montanez-Roldon* at ¶ 11, citing *State v. Price*, 8th Dist. Cuyahoga No. 103023, 2016-Ohio-591, ¶ 12; *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

**{¶23}** In this case, the trial court specifically indicated at the sentencing hearing that it considered the sentencing factors having do with the "seriousness of the offense and the likelihood of recidivism." It stated in its sentencing entry that it "considered all of the required factors of law." Further, Ward was sentenced to eight years on the second-degree felony aggravated vehicular homicide count, and 36 months each on a failure to comply and failure to stop counts, both third-degree felonies. All the sentences were within the applicable sentencing range.

**{¶24}** Moreover, although a purely academic discussion, although Ward indicated remorse at the sentencing hearing, he denied that he was the driver to police at the time of the incident. It was not until several weeks later that police were able to prove he was in fact driving the car by finding glass from the windshield in his hat. As the family stated

at the sentencing hearing, his refusal to admit that he was at fault delayed their healing process and caused them more pain.

{¶25} Additionally, as to his inconsistent sentence argument, this court in *Montanez-Roldon* explained:

> A consistency-in-sentencing determination, along with all sentencing determinations pursuant to R.C. 2929.11 and 2929.12, is a fact-intensive inquiry that does not lend itself to being initially reviewed at the appellate level. At the_least, any review must begin with the defendant producing a record for the trial court's consideration before the final sentence is imposed. As courts have long concluded, a "defendant must raise [the consistency-in-sentencing] issue before the trial court *and* present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." (Emphasis added.) *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 37, citing *State v. Lang*, 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433; *State v. Picha*, 8th Dist. Cuyahoga No. 102506, 2015-Ohio-4380, ¶ 9.

*Montanez-Roldon*, 8th Dist. Cuyahoga No. 103509, 2016-Ohio-3062, ¶ 14.

{¶26} Thus, because Ward did not raise this issue before the trial court, he failed to preserve the issue for appeal. Accordingly, Ward's sixth assigned error is overruled.

{¶27} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON,   JUDGE

EILEEN A. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR

## APPENDIX

Assignments of Error

    I.  The trial court erred in violation of Crim.R. 11(C) by failing to explain the rights that defendant was waiving by pleading guilty.

    II.  The trial court's failure to specifically inquire of defendant whether he understood the nature of the constitutional rights enumerated in Crim.R. 11(C) constitutes a violation of due process.

    III.  The trial court erred by failing to inform defendant he was ineligible for probation thus destroying his ability to make a voluntary, knowing, and intelligent choice in violation of Crim.R. 11.

    IV.  The proceedings below were defective in that no inquiry was made regarding whether defendant understood the nature of the crime and consequently the court erred in accepting a plea which was neither knowingly, willingly nor intelligently made in violation of Crim.R. 11 and defendant's constitutional rights.

    V.  The court erred in failing to merge all or some of the charges.

    VI.  The sentence was disproportionate to the charges.